No. 13-5008

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

————————

STOP THIS INSANITY, INC., *et al.*,

Appellants,

v.

FEDERAL ELECTION COMMISSION,

Appellee.

————————

**On Appeal From the
United States District Court for the District of Columbia
in Case No. 12-1140 (BAH)**

————————

**REPLY BRIEF OF APPELLANTS**

————————

DAN BACKER
DB CAPITOL
STRATEGIES, PLLC
717 King Street
Suite 300
Alexandria, VA 22314
202-210-5431
dbacker@dbcapitolstrategies.com

PATRICIA E. ROBERTS
WILLIAM & MARY LAW
SCHOOL APPELLATE
AND SUPREME COURT
CLINIC
P.O. Box 8795
Williamsburg, VA 23187
757-221-3821
perobe@wm.edu

TILLMAN J.  BRECKENRIDGE
TARA A. BRENNAN
REED SMITH LLP
1301 K Street, NW
Washington, D.C.  20005
202-414-9200
tbreckenridge@reedsmith.com

June 6, 2013                                    *Counsel for Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

GLOSSARY OF ABBREVIATIONS ........................................................ v

SUMMARY OF THE ARGUMENT ........................................................ 1

ARGUMENT .......................................................................................... 3

   I.     THE LEADERSHIP FUND HAS INDEPENDENT FIRST
        AMENDMENT SPEECH RIGHTS. ............................................... 3

   II.    THE GOVERNMENT HAS NO INTEREST IN
        RESTRICTING THE LEADERSHIP FUND'S SPEECH. ................ 6

       A.    Strict Scrutiny Applies To The Contribution, Source,
           And Solicitation Restrictions. ...................................... 6

       B.    The Government Has No Interest In Restricting The
           Leadership Fund's Non-Contribution Speech Or
           Contributions Thereto. ................................................ 8

       C.    The Solicitation Prohibition Does Not Further An Anti-
           Coercion Interest And The Leadership Fund's Plan Of
           Action Nonetheless Addresses Such Concerns. ...................... 12

       D.    The Act, As Applied Here, Burdens Speech. ........................... 15

   III.   THE LEADERSHIP FUND DID NOT WAIVE ITS SECTION
        441b(a) CHALLENGE. ................................................................ 17

   IV.   APPELLANTS ARE ENTITLED TO INJUNCTIVE RELIEF. ........ 17

CONCLUSION ..................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES[*]

## CASES

*Americans for Safe Access v. DEA*,
  706 F.3d 438 (D.C. Cir. 2013) .............................................................5

*Austin v. Mich. Chamber of Commerce*,
  494 U.S. 652 (1990) ........................................................................15

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ..........................................................................6, 9

*Citizens Against Rent Control v. City of Berkeley*,
  454 U.S. 290 (1981) ............................................................... 10, 11, 19

*Citizens United v. FEC*,
  558 U.S. 310 (2010) .......................................................... 3, 4, 5, 9, 19

*EMILY's List v. FEC* ,
  581 F.3d 1(2009) ...........................................................................8, 9

*Davis v. FEC*,
  554 U.S. 724 (2008) ........................................................................16

*Elrod v. Burns*,
  427 U.S. 347 (1976) ........................................................................18

*FEC v. Massachusetts Citizens for Life, Inc.*,
  479 U.S. 238 (1986) ........................................................................16

*FEC v. Nat'l Conservative Political Action Comm.*,
  470 U.S. 480 (1985). ........................................................................4

*FEC v. Wisconsin Right to Life, Inc.*,
  551 U.S. 449 (2007) ........................................................................18

*First Nat'l Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978) ..........................................................................5

_____

[*]    Authorities upon which Appellants chiefly rely are marked with asterisks.

*Hill v. Colorado*,
530 U.S. 703 (2000) ...........................................................................4

*\*McConnell v. FEC*,
540 U.S. 93 (2003) ..........................................................................6, 7

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964) .........................................................................19

*Pickering v. Board of Educ. Twp. High School*,
391 U.S. 563 (1968) .........................................................................11

*SpeechNow.org v. FEC*,
599 F.3d 686 (D.C. Cir. 2010) .................................................... 8, 15

*Speiser v. Randall*,
357 U.S. 513 (1958) .........................................................................11

*U.S. v. Int'l Union United Auto., Aircraft & Agr. Implement Workers of Am.*,
352 U.S. 567 (1957) .........................................................................15

**STATUTES**

2 U.S.C. § 441a(a)(1)(C)............................................................ 8, 15, 19

2 U.S.C. § 441a(a)(3)................................................................. 8, 15, 19

2 U.S.C. § 441b(b)(4)(A)(i) ....................................................... 8, 15, 20

2 U.S.C. § 4441b(a) ...................................................................... 8, 15

**REGULATIONS**

75 Fed. Reg. 13223 (Mar. 19, 2010).................................................9

**OTHER AUTHORITIES**

Dave Manual, Median Household Income in the United States, available at
http://www.davemanuel.com/median-household-income.php (last visited Aug.
22, 2012)............................................................................................13

*FEC Advisory Op. 2010-09, (Club for Growth)*,
2010 WL 3184267 (July 22, 2010) ...............................................14

How Much Does the Average American Make?, available at
  http://www.mybudget360.com/how-much-does-the-averageamerican-make-
  breaking-down-the-us-household-income-numbers/ (last visited Aug. 22, 2012)
  ..................................................................................................................13

# GLOSSARY OF ABBREVIATIONS

| **ABBREVIATION** | **DEFINITION** |
| --- | --- |
| AB | Appellee's Brief |
| Act | The Federal Election Campaign Act |
| AOB | Appellants' Original Brief |
| The Commission | Federal Election Commission |
| JA | Joint Appendix |
| The Leadership Fund | Stop This Insanity, Inc. Employee Leadership Fund |
| MCFL | *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986) |
| NCPAC | *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 494 (1985) |
| NRWC | *Nat'l Right to Work Comm. v. FEC*, 459 U.S. 197 (1982) |
| PAC | Political Action Committee |
| SSF | Separate Segregated Fund |
| STI | Stop This Insanity, Inc. |

## SUMMARY OF THE ARGUMENT

The Commission spends much of its brief making a full-throated endorsement of disclosure requirements even though no disclosure requirements are challenged here. Between the Commission's focus on unchallenged disclosure requirements and its attempt to refocus the case on the Leadership Fund's sponsoring organization, rather than the Leadership Fund itself, in its "Counterstatement of the Issue Presented," the Commission establishes that it has missed what this case is about.

This case is primarily about the Leadership Fund—an independent legal entity—and its right to speak. The Commission does not dispute that the Leadership Fund is a separate entity with its own speech rights, yet it ignores the myriad arguments and substantive discussion the Leadership Fund provided in the opening brief on the real issue presented here: whether the Leadership Fund has a constitutional right to solicit and accept contributions from members of the general public so long as they are kept in a non-contribution account. As secondary matters, the case also implicitly addresses the rights of potential contributors and sponsoring organizations to associate and speak by providing funds to the Leadership Fund.

With respect to the Leadership Fund's right to speak, the appellants established in the opening brief that the Supreme Court has recognized only one

governmental interest in restricting political speech—the anti-corruption interest. The appellants further established that the anti-corruption interest does not apply here. The Commission apparently agrees, as it does not claim that the anti-corruption interest supports the government's speech restrictions as applied to the Leadership Fund. Additionally, the Commission has abandoned the other flawed interests asserted by the district court.

Rather than defend the district court's ruling, the Commission asks this Court to adopt a *new* interest for restricting political speech—the disclosure interest. But it offers no reason why this Court should vastly expand this government interest in *compelling* speech (by requiring disclosure) so that it can give the government the power to *muzzle* speakers simply by failing to require disclosure. There is none. If Congress wishes separate segregated funds ("SSFs") to disclose contributors, sponsorship funds, or any other aspect of an SSF's existence, the Commission's arguments here can be appropriately raised. But in this case, arguments over the value of disclosure requirements amount to nothing more than a straw man.

The Court should not be distracted by the vigor of the Commission's defense of disclosure requirements. No disclosure requirements are at issue here. And in light of the fact that the Commission has no response to the arguments raised in the opening brief, the district court's decision should be reversed.

- 2 -

## ARGUMENT

## I.   THE LEADERSHIP FUND HAS INDEPENDENT FIRST AMENDMENT SPEECH RIGHTS.

The Leadership Fund is organized as a separate segregated fund and therefore has independent First Amendment rights.  Yet the Commission's entire argument is dependent upon re-directing the Court's focus to the rights of Stop This Insanity, Inc. ("STI") and ignoring that this case is primarily brought by the Leadership Fund.  It is the  Leadership Fund whose rights are most trampled by the Federal Election Campaign Act (the "Act")  prohibiting the Leadership Fund from opening a non-contribution account and soliciting and receiving contributions from the general public.

STI and the Leadership Fund are separate legal entities, and the Commission admits as much.  AB 28.  Thus, each possesses an independent right to speak regardless of the Leadership Fund's role as a connected political action committee ("PAC"), for which it receives both specific benefits and specific burdens. *Citizens United v. FEC*, 558 U.S. 310, 337 (2010).  That the Leadership Fund is organized as an SSF does not justify depriving it of the same robust First Amendment speech and associational rights that protect the full-throated political speech of other PACs, individuals, labor unions, corporations, and non-profits. The Supreme Court has long recognized that its "foundational First Amendment cases" are grounded in the recognition that "citizens must be able to discuss issues,

great or small, through the means of expression they deem best suited to their purpose." *Hill v. Colorado*, 530 U.S. 703, 781 (2000).  Indeed, the Supreme Court has expressly rejected the notion that a PAC's "form of organization or method of solicitation diminishes [its] entitlement to First Amendment protection."  *FEC v. Nat'l Conservative Political Action Comm.* ("*NCPAC*"), 470 U.S. 480, 494 (1985). The Leadership Fund fully addressed this point over 10 pages of the AOB.  AOB 18-27.  The Commission did not argue that SSFs do not have free speech rights simply by virtue of the fact that they are connected organizations, nor could it.

Rather, the Commission strives to misdirect the analysis toward STI and away from the independent rights of the Leadership Fund.  But in *Citizens United*, the Supreme Court expressly recognized that an SSF is a separate association, distinct from its connected corporation.  558 U.S. at 337.  Accordingly, the fact that an SSF could engage in some speech did not cure the constitutional maladies in banning its connected corporation's speech.  *Id.*  Nor is the inverse true—that because a corporation's speech is not banned, a connected SSF's may be silenced.

Moreover, it is irrelevant that the sponsoring organization establishes the SSF.  AB 27.  Once established, the SSF is its own entity.  An SSF cannot choose to organize itself, AB 26, but neither can any other organization.  The key point is that, once organized, an SSF exists separate and apart from its sponsoring organization, and it exists as a collection of people who wish to speak.  Thus, it

does not follow that "no SSF can ever exist apart from the [sponsoring organization's] desire to engage in [political] spending."  AB 27.

The Commission's theory could have dangerous, wide-ranging implications. Under its reasoning, the government can restrict the speech of wholly-owned subsidiaries of corporations because they do not exist separately from the control of the company that owns them.  No PAC exists separately from the desire of its contributors to speak.  Allowing restrictions on speech based on the ability of those forming the organization to speak cannot be a proper application of the First Amendment.

Therefore, it is irrelevant whether STI chooses to speak, how much it chooses to speak, or why it chooses to speak or not speak.[1]  STI is a separate organization, and its ability to speak is no more justification for restricting the

---

[1] The Commission asserts that if the only issue here is the Leadership Fund's independent activity, then STI would "seem to lack" a redressable injury-in-fact and would have no Article III standing.  AB 28.  That is beside the point of whether the Leadership Fund is an independent entity with its own speech rights. *See Americans for Safe Access v. DEA*, 706 F.3d 438, 443 (D.C. Cir. 2013) (holding that "to proceed to the merits of [Appellants'] claims, we need only find one party with standing").  In any event, the Commission has not moved to dismiss STI, nor would such a motion have merit.  Just as Glengary LLC and the individual appellants have constitutional interests in contributing to the Leadership Fund so that their voices may be heard, so does STI.  *See Citizens United*, 558 U.S. at 349 ("Political speech does not lose First Amendment protection 'simply because its source is a corporation.'") (quoting *Bellotti*, 435 U.S. at 784).

Leadership Fund's speech as does the right to speak of any other company, person, or organization.

## II.    THE GOVERNMENT HAS NO INTEREST IN RESTRICTING THE LEADERSHIP FUND'S SPEECH.

### A.    Strict Scrutiny Applies to the Contribution, Source, and Solicitation Restrictions.

The source and solicitation restrictions are subject to strict scrutiny. The Commission argues that limitations on the amount of contributions are subject to intermediate scrutiny, citing *Buckley v. Valeo*, 424 U.S. 1 (1976) and relying most heavily on *McConnell v. FEC*, 540 U.S. 93 (2003). AB 34-36. The Commission ignores that this case is about (1) whether certain people may contribute at all, and (2) whether the Leadership Fund may solicit contributions from the general public, which necessarily conveys political speech. These restrictions are far more burdensome and thus command a higher level of scrutiny

In *McConnell*, the Supreme Court explained that limitations on the *amount* an individual may contribute are subject to intermediate scrutiny because "contribution limits 'leave the contributor free to become a member of any political association and to assist personally in the association's efforts on behalf of candidates,' and allow associations 'to aggregate large sums of money to promote effective advocacy.'" 540 U.S. at 136 (citations omitted). The Court further stated that "[t]he 'overall effect' of dollar limits on contributions is 'merely to require

- 6 -

candidates and political committees to raise funds from a greater number of persons.'" *Id*.

The reason the Court ruled a lower level of scrutiny was appropriate in *McConnell* is undermined by the source restrictions here.  SSFs cannot raise funds from a greater number of persons because all but a narrowly defined class are prohibited from contributing.  And the solicitation restrictions directly prohibit core political speech, AOB 42, which is not the case with respect to limits on the amount a person can contribute to a party or candidate.

The Commission only makes a passing argument against the appellants' analysis in the opening brief, stating that none of the authorities cited specifically referred to SSFs.  AB 37.  That is, of course, irrelevant.  The Commission makes no effort to explain why SSFs (and their potential contributors ) receive a lower level of scrutiny over restrictions on their speech.  As is explained above, *infra*, § I., there is no reason to differentiate among organizational forms to determine the weight of their free speech rights.

Regardless, the Court need not resolve the level of scrutiny applicable here. Under any level of analysis, the source and solicitation restrictions as applied to the Leadership Fund are unconstitutional.

**B.    The Government Has No Interest In Restricting The Leadership Fund's Non-Contribution Speech Or Contributions Thereto.**

Free speech analysis requires weighing the burden on speech against the asserted governmental interest.  *See SpeechNow.org v. FEC*, 599 F.3d 686, 692 (D.C. Cir. 2010).  The burden here is obvious:  the Leadership Fund's ability to speak is limited by restrictions on accepting funds for non-contribution expenditures, 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3); source prohibitions, § 4441b(a); and solicitation restrictions, § 441b(b)(4)(A)(i).  *See*, § II.D., *post*.  And there is no countervailing interest.  The Commission has correctly abandoned all of the district court's reasoning as to the government's interests in restricting the Leadership Fund's speech.  It has correctly abandoned the invalid anti-distortion interest; it has correctly abandoned the invalid equalization interest, and most importantly, it has correctly abandoned the inapplicable anti-corruption interest.

In the opening brief, the appellants noted that "[i]n the context of restricting political speech in connection with campaign financing, the Supreme Court has only recognized one interest that may outweigh the First Amendment interests:  preventing quid pro quo corruption or the appearance of such corruption."  AOB 28 (citing *SpeechNow*, 599 F.3d at 692).  The Commission does not refute that. *Citizens United*, *EMILY's List v. FEC* , 581 F.3d 1(2009), and *SpeechNow* are based on the principle that non-contribution expenditures do not give rise to actual or apparent quid pro quo corruption and therefore may not constitutionally be

- 8 -

limited or proscribed.  *Citizens United*, 558 U.S. at 356; *see also Buckley*, 424 U.S. at 25.  Accordingly,  this case does not implicate the anti-corruption interest.

The Commission has no response.  The Commission's reasoning—relying on EMILY's List footnote 7—that *EMILY's List* is inapplicable because the Court "repeatedly emphasized that its 'constitutional analysis of non-profits applies only to *non-connected* non-profits' . . . while explicitly disclaiming to address the constitutionality of FECA as applied to SSFs."  AB 47 (citing *EMILY's List*, 581 F.3d at 8 n.7), is disingenuous.  In the Commission's notice that it was deleting various regulations in response to *EMILY's List*, the Commission expressly adopted a commentator's argument that footnote 7 "was simply a description of how the term 'non-profit entities' was to be used in the opinion because the term 'non-profit entities' does not appear in the Act."  Explanation and Justification for Final Rules on Funds Received in Response to Solicitations, 75 Fed. Reg. 13223, 13224 (Mar. 19, 2010).  In the Commission's own words: "Although the court defined the term non-profit entities as not including SSFs, the court explicitly ordered the District Court to 'vacate the challenged regulations,' referring to [the regulations] in their entirety.  The court provides no exception for SSFs."  *Id.*

The Commission's attempt to distinguish *SpeechNow* and *EMILY's List* by noting that they do not address disclosure requirements, AB 49, also fails.  It is part of the Commission's overall attempt to recast the issue in this case as one of a

"constitutional right to conceal such political spending." AB 39. That claim suffers from two faulty premises. The first is that this case involves a challenge to disclosure requirements. There is no such challenge here. The second is that it is constitutionally permissible to *restrict* speech because courts have found it constitutionally permissible to *compel* speech based on the disclosure interest. That is not so, and the Commission does not identify a single case in which the Supreme Court has ruled that a disclosure interest justifies restrictions on speech rather than an area where Congress *may* require disclosure. *See e.g.*, AB 42-43 (stating that eight Justices in *Citizens United* agreed that the Act's disclosure requirements were "*constitutionally permissible*") (emphasis added).

In *Citizens Against Rent Control*, the Court noted that an ordinance limiting contributions to PACs formed to support or oppose ballot measures submitted to the public placed an "impermissible restraint" on freedom of association and "the freedom of expression of groups and those individuals who wish to express their views through committees." *Id.* at 299. The Court rejected disclosure as an interest justifying the restraint, holding that "[t]he integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed; if it is thought wise, legislation can outlaw anonymous contributions." *Id.* at 299-300. Accordingly, because there was "no significant state or public interest in curtailing debate and discussion of a ballot

- 10 -

measure," the "limits on contributions which in turn limit[ed] expenditures plainly impair[ed] freedom of expression" and were struck down.  *Id.*

It is a bedrock constitutional principle that the government cannot condition a benefit on the surrender of First Amendment rights.  *See Pickering v. Board of Educ. Twp. High School*, 391 U.S. 563, 568 (1968) (rejecting that "teachers may constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work"); *Speiser v. Randall*, 357 U.S. 513, 518 (1958) (holding that because a tax exemption is a "privilege" or "bounty" does not preclude its denial from constituting an impermissible infringement of speech).  But that is exactly what the Commission seeks to do.  Congress has not yet changed disclosure requirements for SSFs in light of *Citizens United*.  But such Congressional inaction cannot justify the continued unconstitutional suppression the Leadership Fund 's independent speech.  In such a scenario, the statutory "tail" wags the First Amendment "dog."

Under the Commission's theory, the government could simply undo *Citizens United* and restrict the speech of corporations, labor unions, non-connected PACs and non-profit entities simply by granting disclosure exemptions.  The appellants made this point in the opening brief, AOB 50, and the Commission has not

articulated any limiting principle in response.  There is none under the

Commission's reasoning.

      In sum, the Commission cannot unconstitutionally enforce a statute because

its constitutionally permissible application creates an "anomalous effect" Congress

would not have contemplated before part of the statute was found unconstitutional.

If Congress wants to ensure that contributions are disclosed to the public,

Congress' only potentially constitutional remedy is to amend the exemption it

created and foster more public disclosure of corporate solicitations for SSFs.

### C.    The Solicitation Prohibition Does Not Further An Anti-Coercion Interest and the Leadership Fund's Plan of Action Nonetheless Addresses Such Concerns.

      The appellants established that the anti-coercion interest is not served by

prohibiting the Leadership Fund from making targeted solicitations to people who

are not part of the restricted class or by making generalized solicitations, like radio

and television ads.  AOB 46-52.  The Commission's responses are inapposite and

confused.  For instance, the Commission responds to the point that other

regulations prohibit coercion by stating that the Leadership Fund has not "pledged

to abide by these restrictions."  AB 54.  Of course the Leadership Fund would

abide by the restrictions.  They are law.  And if the Leadership Fund did not abide

by the provisions, the Commission could enforce them.

Similarly, without support, the Commission claims that Congress has determined that solicitations to employees "are inherently coercive."  AB 52.  But the Leadership Fund does not challenge limitations on how often it can solicit employees.  In any event, if Congress had determined such solicitations were inherently coercive, it would not have allowed them.  Yet it specifically allowed *direct* solicitations to the employees.  Given the fact that some direct solicitations to the restricted class are not too coercive for Congress, it only stands to reason that direct solicitations *to others* that the restricted class will not be privy to and general solicitations on radio and television that restricted class members might overhear are not unduly coercive because they are not directed in any meaningful way at the employees as apart from the general public. [2]

---

[2] The Commission's argument that the ability to solicit unlimited amounts for non-contribution expenditures twice yearly will "coerce" employees, AB 53, while soliciting up to $5,000 from employees twice yearly is not coercive, ignores the historical context in which the $5,000 limit was passed.  The median household income in the United States is currently $46,326.  *See* How Much Does the Average American Make?, available at http://www.mybudget360.com/how-much-does-the-averageamerican-make-breaking-down-the-us-household-income-numbers/ (last visited Aug. 22, 2012).  In the year Congress passed these restrictions and exemptions, the year 1976, the median household income was $10,962 in nominal terms.  Dave Manual, Median Household Income in the United States, available at http://www.davemanuel.com/median-household-income.php (last visited Aug. 22, 2012).  And yet, in 1976, the nominal contribution limit was nearly *half* that median household income: $5,000.  That means Congress allowed a corporation to solicit a maximum contribution of 45.6% of an average employee's median household income, *twice* per year.  These data demonstrate that

Continued on following page

Indeed, the superficial nature of the Commission's concern that the Leadership Fund's proposed non-contribution expenditure solicitations to the general public could coerce the employees of its connected organization, AB50-53, is revealed by the Commission's Club for Growth Advisory Opinion. *See* FEC Advisory Op. 2010-09, (Club for Growth), 2010 WL 3184267, at *3 (July 22, 2010) ("Club for Growth AO"). In the Club for Growth AO, the Commission agreed that the corporation, Club for Growth, Inc. (the "Club") could establish an independent expenditure-only PAC (the "Club PAC") that could solicit and accept contributions from the general public even if the Club paid for the PAC's establishment, administrative, and solicitation expenses. *Id.* It did not express a coercion concern. Indeed, the Commission argues here that STI can engage in the same speech and solicitations the Leadership Fund requests through a super PAC. AB 32, 42. So, clearly, no anti-coercion interest is served under the Commission's view. Similarly, the Commission fails to justify its concern over coercion of suppliers, AB 54, in light of the fact that a corporation can solicit suppliers through other forms of PACs by the Commission's own admission, AB 32.

_____

Continued from previous page
it is not the quantitative contribution limits that prevent coercion—otherwise Congress would have chosen a lower amount.

- 14 -

Accordingly, the Commission can point to no interests sufficient to justify prohibiting the Leadership Fund from soliciting the general public for non-contribution expenditures. *See U.S. v. Int'l Union United Auto., Aircraft & Agr. Implement Workers of Am.*, 352 U.S. 567, 595 (1957) ("It is startling to learn that a union spokesman or the spokesman for a corporate interest has fewer constitutional rights when he talks to the public than when he talks to members of his group.")

### D.     The Act, As Applied Here, Burdens Speech.

The Leadership Fund's ability to speak is limited by restrictions on accepting funds for non-contribution expenditures, 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3); source prohibitions, § 4441b(a); and solicitation restrictions, § 441b(b)(4)(A)(i).  And any burden on speech is unconstitutional when the government has no interest in restricting the speech.  AOB 27-31, 32-40, 43-45; *see also SpeechNow*, 559 F.3d at 695 ("All that matters is that the First Amendment cannot be encroached upon for naught" and noting that where the government has no interest, "something outweighs nothing every time.") (quotations and marks omitted).  That the Leadership Fund can, at significant burden, clone itself and form another organization does not eliminate the burden on speech.  AOB 24-26; *see also Austin v. Mich. Chamber of Commerce,* 494 U.S. 652, 708 (1990) (Kennedy, J., dissenting) ("That the avenue left open is more burdensome than the one foreclosed is 'sufficient to characterize [a

regulatory interpretation] as an infringement on First Amendment activities.'")

(quoting *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 255 (1986)

("*MCFL*")).  And the Commission does not argue otherwise.

In a footnote, the Commission takes issue with the Leadership Fund's

argument that being limited to a small restricted class severely limits the amount of

money it can raise.  AB30 n.9.  Oddly, it relies on cases stating that there is no

equalization interest *for supporting government restrictions on speech*.  *E.g. Davis

v. FEC*, 554 U.S. 724, 738 (2008).  The Leadership Fund is not asking the

government to restrict anyone's speech to equalize speaking ability, and so the

Commission's argument fails.

The Commission primarily claims that STI is not burdened here because it

could form another PAC.  AB 29-33.  As an initial matter, the fact that STI can

form another PAC is irrelevant to whether the Leadership Fund is burdened by

speech restrictions.  *See* § I., *infra*.  Second, assuming STI is "able to operate a

super PAC," that does not mean it would not be burdensome for STI to form and

operate one.  The additional requirements in creating a second PAC "may create a

disincentive for [plaintiffs] to engage in political speech.  Detailed record-keeping

and disclosure obligations, along with the duty to appoint a treasurer and custodian

of the records, impose administrative costs that many small entities may be unable

to bear."  *MCFL*, 479 U.S. at 254-55.

## III.    THE LEADERSHIP FUND DID NOT WAIVE ITS SECTION 441b(a) CHALLENGE.

The Commission does not refute any of the Leadership Fund's argument establishing that it did not waive its challenge to Section 441b(a).  In a footnote, the Commission only states that "the complaint in this case does not clearly articulate the nature of any challenge" regarding section 441b(a), which prohibits SSFs from accepting, *inter alia*, contributions from corporations.  AB 56 n.22. The Commission does not cite any law for its proffered "clear articulation" standard, and does not even suggest that the Commission failed to meet Rule 8's notice pleading requirement.  The Complaint provides proper notice of the challenge to Section 441b(a) as applied, and the issue was fully litigated below. AOB 52-54.  Thus, it is not waived.  Additionally, the parties agree that no separate argument is necessary to address the challenge to Section 441b(a) because the standards by which all of the other challenged sections are judged apply equally to Section 441b(a) here.  AOB 54; AB 56 n.22.

## IV.    APPELLANTS ARE ENTITLED TO INJUNCTIVE RELIEF.

The factors weighed in determining whether injunctive relief is appropriate all favor the appellants here.[3]  AOB 55-58.  In response to the significant burdens

---

[3] The appellants agree that if the request for injunctive relief would be moot if the district court's dismissal of the action were affirmed.

- 17 -

on the Leadership Fund's speech created by the statutes and regulations at issue here, the Commission once again claims that there is no burden on STI. For the reasons stated above, the burden on STI exists but is not the primary burden here. The Leadership Fund's ability to speak is restricted. Moreover, appellants Glengary, LLC, Todd Cefretti, and Ladd Ehlinger—whom the Commission ignores—continue to be harmed by being prevented from making contributions to the Leadership Fund. And as stated in the opening brief and not refuted by the Commission, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" AOB 56 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Additionally, the balance of hardships and public interest weigh in favor of injunctive relief. The Supreme Court has made clear that in any conflict between First Amendment rights and regulation, courts "must give the benefit of any doubt to protecting rather stifling speech," and that "the tie goes to the speaker, not the censor." *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 469, 474 (2007). There is no tie here, though. The Commission only asserts a hardship insofar as it must require disclosure and prevent coercion. But even if the injunction is entered, the Leadership Fund must and will comply with all disclosure requirements applicable to SSFs and all restrictions on directly soliciting the restricted class. If

the Leadership Fund did not do so, the Commission would be within its rights to enforce those provisions just as it always has been permitted to do.

Moreover, an injunction is in the public interest.   The Supreme Court "has long viewed the First Amendment as protecting a marketplace for the clash of differing views and conflicting ideas. That concept has been stated and restated almost since the Constitution was drafted." *Citizens Against Rent Control*, 454 U.S. at 295.  "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people.  The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United*, 558 U.S. at 339.

Indeed, the First Amendment reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times v. Sullivan,* 376 U.S. 254, 270 (1964).  In sum, appellants' activities are at the core of the First Amendment.  The Leadership Fund, as an SSF, must be permitted to make non-contribution expenditures out of unlimited corporate, union, or individual funds, even though it maintains a separate bank account that contributes to candidates from amount- and source-restricted funds.

## CONCLUSION

For the foregoing reasons, the Leadership Fund and other appellants respectably request that this Court reverse the district court's order dismissing this case and denying a preliminary injunction, and direct that the district court enter a preliminary injunction enjoining the contribution limits contained in 2 U.S.C. § 441a(a)(1)(C) and 441a(a)(3), the source prohibitions at § 441b(a), the solicitation restrictions at § 441b(b)(4)(A)(i) and all related regulations as applied to the appellants.

/s/  Tillman J.  Breckenridge
Tillman J.  Breckenridge
Tara A. Brennan
REED SMITH LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, D.C.  20005
202-414-9200

Patricia E. Roberts
WILLIAM & MARY LAW
SCHOOL APPELLATE AND
SUPREME COURT CLINIC
P.O. Box 8795
Williamsburg, VA 23187
757-221-3821

Dan Backer
DB CAPITOL STRATEGIES, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
202-210-5431

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
     28.1(e)(2) or 32(a)(7)(B) because:

     [ X ] this brief contains [*4,119*] words, excluding the parts of the brief
     exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

     [    ] this brief uses a monospaced typeface and contains [*state the number
     of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
     32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
     32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     [ X ] this brief has been prepared in a proportionally spaced typeface using
     [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

     [    ] this brief has been prepared in a monospaced typeface using [*state
     name and version of word processing program*] with [*state number of
     characters per inch and name of type style*].

Dated: June 6, 2013                    /s/ Tillman J. Breckenridge
                                       *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 6th day of June, 2013, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Erin R. Chlopak
David B. Kolker
Adav Noti
FEDERAL ELECTION COMMISSION
999 E Street, NW
Washington, DC  20463
(202) 695-1650

*Counsel for Appellee*

I further certify that on this 6th day of June, 2013, I caused the required copies of the Reply Brief of Appellants to be hand filed with the Clerk of the Court.

/s/ Tillman J. Breckenridge
*Counsel for Appellants*